# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 43960

STATE OF IDAHO, )
                                        )   **Boise, September 2016 Term**

    Plaintiff-Respondent, )
                                          )   **2016 Opinion No. 130**

v. )
                                          )   **Filed: November 10, 2016**

JOHN PATRICK LINZE, JR., )
                                          )   **Stephen W. Kenyon, Clerk**

    Defendant-Appellant. )

_____

Appeal from the District Court of the Third Judicial District of the State of Idaho, Canyon County. Hon. Thomas J. Ryan, District Judge.

The district court's judgment and order of probation is <u>vacated</u> and the order denying Mr. Linze's motion to suppress is <u>reversed</u>.

Eric Fredericksen, Interim State Appellate Public Defender, Boise, attorney for appellant. Sally J. Cooley argued.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for respondent. Russell J. Spencer argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

John Patrick Linze Jr. ("Appellant" or "Mr. Linze") appeals his conviction for possession of methamphetamine. He contends that the district court erred by refusing to suppress evidence obtained by police during a traffic stop. Specifically, Mr. Linze argues that: (1) the traffic stop was impermissibly extended in order to allow time for the drug detection dog to arrive; (2) the traffic stop was impermissibly extended in order to allow the drug detection dog to conduct a sweep; and (3) the alert of the drug detection dog was insufficient to establish probable cause to search the vehicle because the dog was unreliable. Mr. Linze's initial appeal before the Idaho Court of Appeals resulted in his conviction being vacated. That court held that the time during which the drug detection dog conducted its sweep of the vehicle was an impermissible extension

1

of the original traffic stop. This case comes before this Court on a petition for review filed by the State of Idaho.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On November 25, 2013, at approximately 10:19 a.m., Officer J. Bridges of the Caldwell Police Department ("Officer Bridges") initiated a traffic stop in Caldwell, Idaho. The reason given for the stop was that the vehicle had a cracked front windshield in violation of Idaho Code section 49-902. Officer Bridges made contact with the driver of the vehicle, Rhea Monique Linze ("Mrs. Linze"), and the passenger, Mr. Linze, and explained the purpose of the stop. After initiating warrant checks on both Mrs. Linze and Mr. Linze, Officer Bridges called for a Canyon County Sheriff's Office Deputy K-9 Unit. The call for the K-9 Unit was placed at 10:28 a.m., approximately nine minutes after the stop was initiated. Officer Bridges testified that while the K-9 Unit was in transit he continued to conduct the warrant checks and wrote Mrs. Linze a citation for driving with a cracked windshield.

Deputy Bryce Moore ("Deputy Moore") arrived at the scene with his drug detection dog ("Hash") at approximately 10:38 a.m., ten minutes after he was called and nineteen minutes after the stop was initiated. At that time, Officer Bridges stopped writing the citation and running the warrant checks. Deputy Moore then approached Mrs. Linze and asked for consent to search her vehicle. When she refused consent, Deputy Moore walked Hash around the exterior of the vehicle. Hash gave a positive alert at the front of the vehicle. At trial, the State estimated, based on speaking with Officer Bridges, that the time from Deputy Moore's arrival to Hash's alert was two and a half minutes. The State conceded that during those two and a half minutes, Officer Bridges had stopped pursuing the original purpose of the stop and was instead serving a "backup function" to Deputy Moore.

Following Hash's alert, both officers searched the interior of the vehicle. Deputy Moore visually located a glass pipe with white crystal residue in the passenger door panel armrest. After retrieving the pipe, Officer Bridges informed Mr. and Mrs. Linze of their Miranda rights. Mr. Linze admitted to ownership of the pipe and admitted that he used it to consume methamphetamine.

Before the district court, Mr. Linze moved to suppress all physical evidence, testimony, lab reports, photos, documents, and incriminating statements resulting from the search of Mrs. Linze's vehicle. A hearing on the motion to suppress was held on April 28, 2014.

2

At the hearing, Officer Bridges testified that he did not delay the traffic stop while waiting for the K–9 Unit to arrive. He testified that the stop took twenty minutes because: "I was thorough. On warrant checks I ran both through the computer. And my handwriting is very sloppy, so I take my time when I write my tickets. . . . If I would have finished early, I would have called off the canine." Officer Bridges further testified that while Deputy Moore conducted the dog sweep, he stepped out of his car and provided "cover." "It's for his safety," Officer Bridges explained. "He's not paying attention to his surroundings when he's doing his canine sweep, so I just make sure that I watch and nobody comes and tries to do us harm."

Following the hearing, the district court denied Mr. Linze's motion to suppress. It held as follows: (1) "Officer Bridges had a reasonable articulable suspicion that the vehicle had a cracked front windshield and was being driven contrary to traffic laws"; (2) "the length of the investigatory detention was not unlawfully extended from the time of the initial stop to the time Corporal Moore's canine gave a positive alert on the vehicle"; and (3) "the canine alert gave officers probable cause to search the interior of the vehicle."

On appeal, the Idaho Court of Appeals overturned the district court's denial of the motion to suppress. The State petitioned this Court for review.

### III. ISSUES ON APPEAL

1. Did the district court err in determining that Officer Bridges' actions did not unlawfully extend the traffic stop such that Mr. Linze's Fourth Amendment rights were violated?

2. Did the district court err in determining that Officer Bridges and Deputy Moore had probable cause to search Mrs. Linze's vehicle?

### IV. STANDARD OF REVIEW

> The Court reviews the denial of a motion to suppress using a bifurcated standard. *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id.* "However, this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id.*

*State v. Svelmoe*, 160 Idaho 327, 330, 372 P.3d 382, 385 (2016).

### V. ANALYSIS

**A. The traffic stop was impermissibly extended in violation of Mr. Linze's Fourth Amendment rights.**

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The stop of a vehicle by law

3

enforcement constitutes a seizure of its occupants to which the Fourth Amendment applies. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The seizure of a vehicle's occupants in order to investigate a traffic violation is a "reasonable seizure" under the Fourth Amendment so long as the seizing officer had reasonable suspicion that a violation had occurred. *See Rodriguez v. U.S.*, 135 S. Ct. 1609, 1614 (2015) ("A seizure for a traffic violation justifies a police investigation of that violation."). However, "[b]ecause addressing the infraction is the purpose of the stop, it may 'last no longer than is necessary to effectuate that purpose.'" *Id.* (quoting *Illinois v. Caballes,* 543 U.S., 405, 407 (2005)). "Authority for the seizure thus ends when tasks tied to the traffic infraction are—or reasonably should have been—completed." *Id.*

Here, we have a case in which a police officer had probable cause because Mrs. Linze was driving with a cracked windshield, which constitutes a traffic violation. It follows that the initial seizure was reasonable under the Fourth Amendment. The pertinent question before this Court is whether or not the seizure remained reasonable under the Fourth Amendment once Officer Bridges abandoned the purpose of the seizure in order to aid in a search for contraband. We hold that it did not.

This Court's holding is guided by the United States Supreme Court's decision in *Rodriguez*. 135 S. Ct. at 1613. In *Rodriguez*, a Nebraska K-9 officer pulled a vehicle over after observing it veer onto the shoulder of the highway. *Id.* After calling for a second officer, the K-9 officer finished running a records check and wrote a warning ticket to the driver of the vehicle. *Id.* The officer gave the driver the warning ticket, but did not allow him to leave. *Id.* Instead, the officer instructed the driver to wait for the second officer to arrive. *Id.* After roughly six minutes, the second officer arrived, at which time the two officers conducted a drug dog sweep. *Id.* The dog alerted, and methamphetamine was located in the vehicle. *Id.*

The United States Supreme Court framed the question before it as "whether police routinely may extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff." *Id.* at 1614. However, the United States Supreme Court did not restrict its analysis to cases in which the underlying purpose of the traffic stop was completed prior to a drug dog sweep. *Id.* Instead, the United States Supreme Court reached a much broader holding: "a police stop exceeding the time needed to handle the matter for which the stop was made violates the Constitution's shield against unreasonable seizures." *Id.* This rule is both broad and inflexible. It applies to all extensions of traffic stops including those that could reasonably be

4

considered *de minimis*. *Id.* at 1615–16 (rejecting the application of a *de minimis* exception previously adopted by the Eighth Circuit).

The parties before this Court have suggested two competing interpretations of the United States Supreme Court's holding in *Rodriguez*. The State suggests that *Rodriguez* allows a seizing officer to deviate from the purpose of a traffic stop up until the time at which the stop should have been reasonably completed. In other words, for each traffic stop there is an objective amount of time within which that stop should reasonably be completed and any unrelated action taken by an officer within that amount of time does not violate the seized parties' Fourth Amendment rights.

Conversely, Mr. Linze reasons that a deviation from the original purpose of a traffic stop will inevitably lengthen the time needed to complete the original purpose of the seizure, and, accordingly, will result in a stop that "exceed[s] the time needed to handle the matter for which the stop was made." Under Mr. Linze's suggested interpretation, the timing of an officer's departure from the original purpose of the seizure is irrelevant, it only matters that the officer departed from that purpose.

We hold that Mr. Linze's interpretation of *Rodriguez* is correct. The United States Supreme Court has plainly established that a traffic stop is a seizure, but it is not an unreasonable seizure under the Fourth Amendment so long as there is a reasonable suspicion that the vehicle is being driven contrary to traffic laws. *United States v. Cortez*, 449 U.S. 411, 417 (1981). The stop remains a reasonable seizure while the officer diligently pursues the purpose of the stop, to which that reasonable suspicion is related. However, should the officer abandon the purpose of the stop, the officer no longer has that original reasonable suspicion supporting his actions. Indeed, when an officer abandons his or her original purpose, the officer has for all intents and purposes initiated a new seizure with a new purpose; one which requires its own reasonableness under the Fourth Amendment. This new seizure cannot piggy-back on the reasonableness of the original seizure. In other words, unless some new reasonable suspicion or probable cause arises to justify the seizure's new purpose, a seized party's Fourth Amendment rights are violated when the original purpose of the stop is abandoned (unless that abandonment falls within some established exception).

Further enforcing the merits of Mr. Linze's interpretation of *Rodriguez* is the fact that the State's proposed interpretation cannot be reconciled with the United States Supreme Court's

5

analysis. In *Rodriguez*, the United States Supreme Court explicitly rejected an argument advanced by the Government that "by completing all traffic-related tasks expeditiously, an officer can earn bonus time to pursue an unrelated criminal investigation." 135 S.Ct at 1616. The gist of this argument was that because there is a set "reasonable" amount of time for each stop, any officer who completes his or her duties under that amount of time can pursue unrelated investigations. In rejecting this argument, the United States Supreme Court noted that "an officer always has to be reasonably diligent." *Id.* The United States Supreme Court reasoned that "[i]f an officer can complete traffic based inquiries expeditiously, then that is the amount of time reasonably required to complete the stop's mission." *Id.* (internal citations omitted). The United States Supreme Court concluded that "the critical question, then, is not whether the dog sniff occurs before or after the officer issues a ticket . . . but whether conducting the sniff 'prolongs'— *i.e.*, adds time to—'the stop'" *Id.* The United States Supreme Court's intention in *Rodriguez* is thus made clear. The rule isn't concerned with when the officer deviates from the original purpose of the traffic stop, it is concerned with the fact that the officer deviates from the original purpose of the stop at all.[1] The State's interpretation of *Rodriguez* violates the United States Supreme Court's underlying conclusion that "an officer always has to be reasonably diligent." *Id.*

In sum, we hold that by delaying the traffic stop for two and a half minutes while performing a back-up function for a drug dog sweep, Officer Bridges violated the Fourth Amendment rights of Mr. and Mrs. Linze.[2]

**B.      This Court need not address whether Officer Bridges and Deputy Moore had probable cause to search Mrs. Linze's vehicle.**

Because we have concluded that Mr. Linze's Fourth Amendment rights were violated during the drug dog sniff, we need not address whether or not that sniff properly established probable cause.

## VI. CONCLUSION

We vacate the district court's judgment and order of probation, and reverse the order denying Mr. Linze's motion to suppress.

---

[1] The United States Supreme Court is careful to couch its opinion in the "adds time to" framework. It does this in order to allow for dog sniffs that do not add time to the stop (*i.e.,* dog sniffs in which one officer continues to pursue the original objectives of the stop while a second officer conducts a dog sniff).

[2] While such a brief period of time could reasonably be considered *de minimis*, the United States Supreme Court was clear in *Rodriguez* that *de minimis* exceptions are no longer available.

Chief Justice J. JONES, Justices EISMANN, BURDICK and HORTON, **CONCUR.**